# Third District Court of Appeal

## State of Florida

Opinion filed January 2, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-1833
Lower Tribunal No. F10-733
_____

**Lavell Nixon,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Lourdes Simon, Judge.

Carlos J. Martinez, Public Defender, and Manuel Alvarez, Assistant Public Defender, for appellant.

Ashley Moody, Attorney General, and Sandra Lipman, Senior Assistant Attorney General, for appellee.

Before LOGUE, C.J., and LINDSEY and BOKOR, JJ.

LOGUE, C.J.

Lavell Nixon appeals the trial court's denial of his Rule 3.850 Motion for Post-Conviction Relief alleging ineffective assistance of counsel. Among other things, Nixon asserts his counsel was ineffective for failing to move to strike a juror for cause because the juror made statements during voir dire implying she had a negative perception of the defendant's appearance and demeanor. She noted the defendant had gold teeth and kept staring at the wall, and then she stated she was unsure if she could be fair. We affirm, however, because the defendant failed to show the juror was "actually biased," as required in the post-conviction context under Florida Supreme Court precedent. In evaluating the soundness of the defendant's trial strategy, we also note that the defense at trial forcefully and successfully opposed the State's attempt to strike this same juror that the defendant now claims should have been struck. The State moved to strike the juror (and the defense opposed the State's motion) because of other statements made by the juror that were favorable to the defense.

## BACKGROUND

In 2010, Nixon was charged by information with two counts of attempted first-degree murder and one count of possession of a firearm by a convicted felon. Nixon's charges arose from a shooting at a strip club that occurred during the early morning hours of December 25, 2009. Two people

2

were injured. Following a jury trial, Nixon was found guilty of attempted first-degree murder, attempted second-degree murder, and possession of a firearm by a convicted felon. His convictions and sentences were affirmed by this Court on direct appeal in <u>Nixon v. State</u>, 203 So. 3d 168 (Fla. 3d DCA 2016).

On February 12, 2019, Nixon filed an Amended Motion to Vacate Conviction and Sentence Pursuant to Florida Rule of Criminal Procedure 3.850. He argued, in pertinent part, that trial counsel was ineffective for failing to exercise a cause challenge on Juror No. 1. In support, Nixon cited the following exchange that occurred during voir dire:

> DEFENSE COUNSEL: Okay. After all the facts are in, and the testimony, you hear all the facts, and the Judge gives you the law that applies to the case, you think you can be fair to both sides?
>
> . . . .
>
> JUROR NO. 1: I mean, I certainly will try, you know, and looking over at the defendant.
>
> DEFENSE COUNSEL: Okay. But, you know, that gives you pause.
>
> JUROR NO. 1: Well, I mean, he has some gold teeth.
>
> DEFENSE COUNSEL: Okay. You could see the gold teeth?
>
> JUROR NO. 1: He keeps looking at the wall.

3

DEFENSE COUNSEL: And that bothers you. Okay. I'm very sorry that I called on you. Thank you, sir. All right. Now, let me ask you, number one.

JUROR NO. 1: Okay. You didn't call on me, I just spoke up.

DEFENSE COUNSEL: That's all right. What do you think.

JUROR NO. 1: I mean, I'm just a little bit unsure, that I could really - -

DEFENSE COUNSEL: Okay. There's no right or wrong answer. Just tell me how you feel.

Okay. And, after you hear all the evidence and the Judge reads you the law, okay. There's the evidence, there is the law, and could you be fair to both sides, that's the question I'm asking you.

JUROR NO. 1: Well, I don't really know.

Defense counsel did not thereafter move to strike Juror No. 1 for cause. Notably, however, the State did, contending Juror No. 1's responses indicated she would not be able to follow the law. Specifically, during the State's voir dire questioning, Juror No. 1 stated she would need more than testimonial evidence to find the defendant guilty. Defense counsel objected to the State's cause challenge and argued that "[a]t the end, I asked [Juror No. 1], if she could be fair, and she said yes." The trial court then denied the cause challenge, noting Juror No. 1 "did not say [she] couldn't be fair beyond a reasonable doubt."

4

The trial court conducted an evidentiary hearing on Nixon's Rule 3.850 motion. At the evidentiary hearing, defense counsel testified she opposed the State's cause challenge because she confused Juror No. 1 with another juror and was under the mistaken impression that Juror No. 1 had subsequently been rehabilitated.

The trial court ultimately denied Nixon's Rule 3.850 motion, and this appeal timely followed.

## ANALYSIS

Where a Rule 3.850 claim alleging ineffective assistance of counsel is denied following an evidentiary hearing, this Court affords deference to the trial court's factual findings. Sochor v. State, 883 So. 2d 766, 772 (Fla. 2004) (citing Stephens v. State, 748 So. 2d 1028, 1033 (Fla. 1999)). See also McLin v. State, 827 So. 2d 948, 954 n.4 (Fla. 2002). Legal conclusions, however, are reviewed de novo. Sochor, 883 So. 2d at 772; Stephens, 748 So. 2d at 1033.

To demonstrate entitlement to relief on a claim of ineffective assistance of counsel, a defendant must satisfy the requirements set forth in Strickland v. Washington, 466 U.S. 668 (1984):

> First, counsel's performance must be shown to be deficient. Deficient performance in this context means that counsel's performance fell below the standard guaranteed by the Sixth Amendment.

When examining counsel's performance, an objective standard of reasonableness applies, and great deference is given to counsel's performance. The defendant bears the burden to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. This Court has made clear that [s]trategic decisions do not constitute ineffective assistance of counsel. There is a strong presumption that trial counsel's performance was not ineffective.

Second, the deficient performance must have prejudiced the defendant, ultimately depriving the defendant of a fair trial with a reliable result. A defendant must do more than speculate that an error affected the outcome. Prejudice is met only if there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Both deficient performance and prejudice must be shown.

Hilton v. State, 326 So. 3d 640, 648 (Fla. 2021) (quoting Bradley v. State, 33 So. 3d 664, 671-72 (Fla. 2010)) (internal citations omitted).

"[W]here a postconviction motion alleges that trial counsel was ineffective for failing to raise or preserve a cause challenge, the defendant must demonstrate that a juror was actually biased." Carratelli v. State, 961 So. 2d 312, 324 (Fla. 2007).[1] This "actual bias" standard requires a

---

[1] We note the United States Court of Appeals for the Eleventh Circuit disagrees with Carratelli on this point. See Guardado v. Sec'y, Fla. Dep't of Corr., 112 F.4th 958, 992 (11th Cir. 2024) ("Showing the juror was actually

defendant to demonstrate "that the juror in question was not impartial—i.e., that the juror was biased against the defendant, and the evidence of bias must be plain on the face of the record." Id. And "[i]n cases governed by Carratelli, 'the record' is the record of the voir dire conducted for jury selection." Martin v. State, 322 So. 3d 25, 36 (Fla. 2021). This is because "[a] Carratelli claim requires the postconviction court to measure counsel's performance in light of what the attorney heard from potential jurors during voir dire." Id.

The juror's bias, moreover, must be clear. "Only where a juror's bias is so clear can a defendant show the necessary prejudice under Strickland, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

_____

biased could be enough to establish prejudice, but Strickland doesn't require a showing of actual bias."). As a Florida District Court of Appeal, we follow the interpretation of our Florida Supreme Court. See, e.g., Hoffman v. Jones, 280 So. 2d 431, 440 (Fla. 1973) ("[A] District Court of Appeal does not have the authority to overrule a decision of the Supreme Court of Florida."); State v. Lott, 286 So. 2d 565, 566 (Fla. 1973) ("[T]he District Courts of Appeal follow controlling precedents set by the Florida Supreme Court."); Solares v. City of Miami, 166 So. 3d 887, 888 (Fla. 3d DCA 2015) ("[W]e cannot . . . ignore [ ] controlling precedents.").

outcome.'" Jenkins v. State, 824 So. 2d 977, 982 (Fla. 4th DCA 2002) (quoting Strickland, 466 U.S. at 694).

As the Florida Supreme Court has explained in similar cases involving ineffective assistance of trial counsel pertaining to the failure to challenge a juror for cause, "the juror must indicate something more than mere doubt about that juror's impartiality." Mosley v. State, 209 So. 3d 1248, 1265 (Fla. 2016). As in Mosley, even if Juror No. 1's statements "were considered to be a discussion as to whether she could be fair, Juror [No. 1's] statements merely express[ed] doubt, which . . . does not establish actual bias against the defendant." Id. at 1266.

For example, in Miller v. State, 331 So. 3d 1268 (Fla. 2d DCA 2022), the Second District held the defendant was entitled to postconviction relief based on defense counsel's failure to exercise a strike for cause against a juror that ultimately sat on the jury. Id. at 1270. There, the Second District concluded the juror was biased against the defendant because when asked during voir dire regarding the defendant's constitutional right to remain silent, the juror responded: "I've never understood. It always seems like it's an admission of guilt by not speaking." Id. The defendant in that case did not testify at trial. The Second District reasoned that if a juror expresses their belief that "when a defendant does not testify '[i]t always seems like it's an

8

admission of guilt,'" and the defendant does not testify at trial, then "[u]nder these circumstances, the record plainly shows that [the juror] was biased against [the defendant] for exercising his right to remain silent." Id. at 1273.

Similarly, in Titel v. State, 981 So. 2d 656 (Fla. 4th DCA 2008), the Fourth District also held counsel was ineffective for failing to exercise a cause challenge against a juror. The Fourth District concluded the juror was biased against the defendant because when asked whether he had any predetermined thoughts concerning rape, the juror responded: "I'm dead set against that trauma a woman or child go through with any sexual abuse. I have a granddaughter involved in incest with a son-in-law. I'm dead set against it. I believe in the law of execution for rapists. I'm just telling the truth." Id. at 657. The juror went on to serve on the jury that convicted the defendant of sexual battery and kidnapping.

In each of these examples, the jurors' statements demonstrating bias were clear and unequivocal—"It always seems like an admission of guilt" or "I believe in the law of execution for rapists." Here, in contrast, when asked whether she could be fair to both sides, Juror No. 1 initially responded she "certainly [would] try" before noting Nixon's gold teeth and that he kept "looking at the wall" and then stating she "[didn't] really know" whether she could be fair to both sides.

We are constrained by the Florida Supreme Court's express directive that statements by a juror merely expressing doubt are insufficient to establish actual bias against a defendant. Mosley, 209 So. 3d at 1265–66. Juror No. 1's equivocations, fluctuating between certainty and uncertainty, is a far cry from the unequivocal statements found to demonstrate actual bias in Miller and Titel.

Furthermore, as the Florida Supreme Court explained in Martin, the record a postconviction court reviews in these circumstances is limited to the record of the voir dire. Martin, 322 So. 3d at 36. This is because the postconviction court is required to measure counsel's performance in light of what the attorney heard during voir dire. Id. While Nixon focuses on the exchange where Juror No. 1 referred to his gold teeth and then expressed uncertainty about whether she could be fair, he seemingly disregards an earlier exchange that occurred during voir dire where Juror No. 1 stated she would need more than testimonial evidence to find the defendant guilty. Such comments undoubtedly favored Nixon.

Given these statements and examining defense counsel's performance under an objective standard of reasonableness, as we must, counsel's decision not to challenge Juror No. 1 for cause (and, notably, to

oppose the State's challenge of Juror No. 1 for cause) could be considered sound trial strategy.[2] See Hilton, 326 So. 3d at 648.

Accordingly, under the circumstances presented, we conclude the trial court's denial of Nixon's Rule 3.850 motion was proper and affirm because Nixon failed to establish his counsel was ineffective for failing to challenge Juror No. 1 for cause.

Affirmed.

---

[2] While defense counsel later testified at Nixon's Rule 3.850 hearing that she opposed the State's cause challenge because she was under the mistaken impression that Juror No. 1 had been rehabilitated, such post-hoc statements concerning counsel's subjective state of mind do not necessarily require a finding of deficient performance. See Harrington v. Richter, 562 U.S. 86, 109–10 (2011) ("After an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome. Strickland, however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." (citing Strickland, 466 U.S. at 688)).

BOKOR, J., specially concurring.

The majority opinion ably tracks the factual background and the relevant legal standards, and I concur in the result. However, I believe we have a problem with our standard of proof for an ineffective assistance of counsel claim as it relates to the failure to challenge a juror for cause or use a preemptory strike. While the majority correctly sets forth Florida's standard, articulated in Carratelli v. State, 961 So. 2d 312, 324 (Fla. 2007), I believe this should be revisited by our supreme court considering the holding of the Eleventh Circuit Court of Appeals in Guardado v. Secretary, Florida Department of Corrections, 112 F.4th 958 (11th Cir. 2024).

Carratelli interprets the Strickland[3] prejudice tests to require, in the context of a postconviction motion, proof that the juror "was actually biased." 961 So. 2d at 324. The majority correctly applies Carratelli's "bias-in-fact" standard, concluding that Juror No. 1's comments about gold teeth fail to show actual bias. But I think the Eleventh Circuit articulated the correct standard in the postconviction context—whether Nixon satisfied "Strickland's 'highly demanding' standard of showing a substantial likelihood that, absent

---

[3] Strickland v. Washington, 466 U.S. 668 (1984).

12

any error by trial counsel in failing to challenge or strike the [relevant] juror[],” Nixon would've obtained a more favorable result. <u>Guardado</u>, 112 F.4th at 995. Because, based on the facts of this case, I do not see a substantial likelihood that Nixon would have succeeded under either test, I concur in the outcome reached by the majority, but I believe a de novo analysis under the standard outlined in <u>Guardado</u> would be the constitutionally appropriate route to get there.

LOGUE, C.J., concurs.